**GIBNEY, ANTHONY & FLAHERTY, LLP**
JOHN MACALUSO (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile:  (212) 688-8315
E-mail:  JMacaluso@Gibney.com
**And**
**STEPHEN M. GAFFIGAN, P.A.**
STEPHEN M. GAFFIGAN(Admitted Pro Hac Vice)
312 S.E. 17th Street, Second Floor
Ft. Lauderdale, Florida 33316
Telephone: 954-767-4819
Facsimile: 954-767-4821
E-mail: Stephen@smgpa.net

Attorneys for CHANEL, INC., a New York Corporation,

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York corporation, | CASE NO. CV 07-4858 (NRB) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR DAMAGES** |
| LINDA ALLEN a/k/a LINDA ROONEY a/k/a COURTNEY ALLEN, d/b/a EUROPEAN BEAUTY FASHIONS d/b/a EUROPEANBEAUTYFASHIONS.COM d/b/a MY CLASSY FASHION d/b/a MYCLASSYFASHION.COM d/b/a ULTIMATEDESIGNERSHANDBAGS. COM d/b/a ULTIMATE DESIGNER HANDBAGS and DOES 1-10, | |
| Defendants. | |

Plaintiff, Chanel, Inc., a New York corporation ("Chanel") hereby file its Memorandum of

Points and Authorities in Support of Damages Against Defendant Linda Allen a/k/a Linda Rooney

a/k/a Courtney Allen d/b/a European Beauty Fashions d/b/a EuropeanBeautyFashions.com d/b/a My

Classy Fashion d/b/a MyClassyFashion.com d/b/a UltimateDesignersHandbags.com d/b/a Ultimate

Designer Handbag ( "Defendant" or "Allen") as required by this Court's Order, dated March 19,

2008, and states as follows:

## I.    INTRODUCTION

As outlined in Plaintiff's Complaint against Defendant Allen, filed on June 07, 2007

(Docket No. #1), Plaintiff has sued the Defendant for federal trademark counterfeiting and

infringement pursuant to 15 U.S.C. §1114 (Count I), federal false designation of origin pursuant

to § 43(a) of the Lanham Act (Count II), federal trademark dilution 15 U.S.C. §1125(c) (Count

III), and common law trademark infringement (Count IV).  This suit arose out of Defendant's

fraudulent distribution and sale of counterfeit goods, namely, handbags, wallets, watches,

necklaces, costume jewelry including earrings, and sunglasses (the ADefendant's Goods@),

bearing the Plaintiff's federally registered and common law trademarks as identified in Paragraph

7 of the Complaint.  See Docket Number 1.  The Defendant continuously promoted and sold to

the public goods bearing counterfeits of the Chanel Marks with the knowledge that the goods

were not genuine and that it was illegal to sell such goods.  This fact is evidenced by the

disclaimers on her Internet websites describing the goods as "replica" which demonstrate the

Defendant's clear intent to derive the benefit of Chanel world-famous reputation and to defraud

the public.

By her actions the Defendant was intentionally misrepresenting to the public that her

products were associated with Chanel.  Moreover, the Defendant's infringement and

counterfeiting took place in total reckless disregard for or with willful blindness to Chanel=s

rights and in spite of the Defendant's actual knowledge that her use of the Chanel Marks or

copies thereof, was in direct contravention of Chanel's rights.  The Defendant's unlawful

activities earned her profits and caused irreparable injury and damage to Chanel.  Among other

things, the Defendant deprived Chanel of its right to determine the manner in which its

trademarks are presented to the public through merchandising, defrauded the public into thinking

2

that the Defendant's worthless counterfeit goods are associated with Chanel, and wrongfully traded and capitalized upon the Plaintiff's reputation and goodwill and the commercial value of its trademarks.

As the parties have already stipulated to liability on all Counts of the Complaint against Defendant Allen, this Memorandum will only address the remaining issues identified in this Court's Order, dated March 19, 2008.  Attached to this Memorandum are Declarations which support Plaintiff's requests for damages, attorneys' fees and costs.

## II.    ARGUMENT

### A.    The Defendant Is Not Entitled To A Jury Trial, Non-Jury Trial Or An Evidentiary Hearing On The Issue Of Damages.

The Defendant contends she is entitled to a jury trial, a non-jury trial or an evidentiary hearing on the issue of damages.  The Defendant's contention in that regard is without merit.  In an effort to resolve this litigation in an expeditious and cost effective manner, the parties entered into a Stipulated Consent Partial Final Judgment as to liability and entry of a Permanent Injunction (the "Stipulation").  Pursuant to the Stipulation, Judgment was entered in favor of Chanel and against the Defendants on all five Counts of the Complaint.  However, Chanel agreed to elect a statutory damage claim pursuant to 15 U.S.C §1117(c) with respect to Count I of the Complaint and to limit damages on all other claims to whatever amount the Court awards as to Count I.  The parties' agreement to focus solely on a statutory damage award was made in recognition of the fact the Defendants had no ability to produce full and accurate records regarding their counterfeiting activities.  Therefore, a calculation of Defendant's actual profit and/or Chanel's actual damages would be nearly impossible.

Title 15 U.S.C § 1117, provides, in pertinent part, as follows:

## § 1117. Recovery for violation of rights

(a) Profits; damages and costs; attorney fees

3

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b) Treble damages for use of counterfeit mark

In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title or section 220506 of Title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

(c) Statutory damages for use of counterfeit marks

In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

> **(1)** not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> **(2)** if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

As held in similar cases in this District, determination of statutory damages pursuant to 15 U.S.C §1117(c) is for the Court and not a jury. Gucci America, Inc. v. Accents, 994 F.Supp. 538 (S.D.N.Y 1998) ("If Plaintiffs so elect, the determination of statutory damages, within the specific guidelines set forth in the statute, is for the Court. Cf. Oboler v. Goldin, 714 F.2d 211, 213 (2nd Cir. 1983) (determination of statutory damages for copyright infringement is for the Court rather than jury). The amount of the statutory damage award is within the sole discretion of the Court. Id.    Hence, neither a jury nor non-jury trial is appropriate. As for an evidentiary hearing, Plaintiff submits that the need for such should be determined by the Court. Plaintiff has submitted all of its available evidence by Declarations and Exhibits thereto. Defendant will surely do the same in her response. An evidentiary hearing is therefore not likely to add much to the picture. Plaintiff suggests that oral argument could resolve any questions which might arise in the Court's mind regarding proper application of 15 U.S.C . §1117.

### B.    Chanel Is Entitled to an Award of Statutory Damages Pursuant to 15 U.S.C. §1117(c)

As alleged in the Complaint and confirmed in the Stipulation and Declarations filed in this action, the handbags, wallets, watches, necklaces, costume jewelry including earrings, and sunglasses distributed, sold and/or offered for sale by the Defendant bore and\or were sold under counterfeits of the Chanel Marks. See Declaration of Adrienne Hahn Sisbarro ("Hahn Decl.") ¶¶11, 12, 14, and 17 (attached hereto as Exhibit "A"), and Declaration of Skipp Porteous ("Porteous Decl.") ¶¶6-8 (attached hereto as Exhibit "B"), true and correct copies of documents

produced by Defendant (attached hereto as Exhibit "C"), and Declaration of Robert Holmes ("Holmes Decl.") ¶6, 11and 15 (attached hereto as Exhibit "D").

In a case involving the use of counterfeit marks in connection with a sale, offering for sale or distribution of goods, 15 U.S.C. ' 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $500.00, nor more than $100,000.00 per counterfeit mark, per type of goods. In addition, if the Court finds that Defendant's counterfeiting actions were willful, then it may impose damages above the maximum limit up to $1,000,000.00 per infringement. 15 U.S.C. ' 1117(c)(2).

Chanel issued discovery requests seeking all data and documents reflecting Defendant's sales and profits, and the extent of her counterfeiting activities. In response, the Defendant produced several pages of records purportedly representing sales transactions for Chanel branded goods made via her MyClassyFashion.com website. See a true and correct copy of Defendant's produced documents and accompanying explanatory email from Defendant's counsel attached hereto as Composite Exhibit "C." The produced documents did not provide a complete accounting of the number of products bearing counterfeits of the Chanel Marks which have been sold by the Defendant. Specifically, the report selectively produced by the Defendant was limited to calendar year 2007 and did not cover sales of items bearing counterfeits of the Chanel Marks prior to that period despite the fact that Chanel had already informed Defendant's counsel Chanel could prove such prior sales of counterfeit Chanel goods. See Composite Exhibit "C;" Holmes Decl. at ¶6, 11 and 15; Porteous Decl. at ¶¶6-8. Incredibly, through her counsel, Defendant stated that she "did not represent Chanel in any form" on her Europeanbeautyfashions.com website. Composite Exhibit "C" at Page 1. Compare printout of Defendant's Europeanbeautyfashions.com website printout attached to the Declaration of

6

Lynnette Oka ("Oka Decl.") (attached hereto as Exhibit "E") as Exhibit "1."

The Defendant's website and Porteus' purchase of a counterfeit Chanel handbag from Europeanbeautyfashions.com on December 14, 2004, make it abundantly clear the Defendant has not been truthful in her discovery disclosures. Not only did the Defendant fail to provide a complete and accurate record of the sales and profits earned through her various websites, the Defendant also failed to provide any documents or information reflecting her purchases of the goods at issue or payments received by the Defendant via PayPal, personal checks, and/or money orders. Notably, the Defendant produced no sales invoices, purchases orders, ledgers, credit card statements, receipts or any other relevant documents or information which would assist Chanel or the Court in determining her actual sales and profit.

In view of the foregoing, Chanel has no choice but to elect to recover an award of statutory damages pursuant 15 U.S.C. ' 1117(c).

**C.    Chanel Is Entitled to Enhanced Damages Based Upon Defendants' Willful Counterfeiting and Infringement.**

**1.    The Defendant Acted with Knowledge and Willful Intent.**

Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g., S. REP. NO. 104-177, pt. V (7) (1995) (discussing purposes of Lanham Act statutory damages). This case is no exception. In light of the large quantity of counterfeit products advertised, offered for sale, and sold by the Defendant, the significant number of federal registrations the Defendant was infringing, and the reasonable inference that Chanel's limited investigation did not capture the full scale of the Defendant's operation, a large statutory damage award is reasonable and appropriate. The Chanel Marks are renowned worldwide as identifiers of high quality merchandise. The fact the Defendant sold goods using marks which are identical

7

to the Chanel Marks shows conclusively her desire and purpose to trade upon Chanel's goodwill. Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc., 823 F. Supp. 1077, 1087 (S.D.N.Y. 1993). The evidence establishes the Defendant is a counterfeiter who has no respect for intellectual property laws. By virtue of Chanel's Federal Registrations, the Defendant had full constructive knowledge of Chanel's ownership of the Chanel Marks, including its exclusive right to use and license the trademarks and the goodwill associated therewith and Chanel exclusive right to distribute its handbags, wallets, watches, necklaces, costume jewelry including earrings, and sunglasses. See Hahn Decl. ¶5 and true and correct copies of Chanel's Federal registrations attached thereto as Composite Exhibit "1," and Oka Decl. ¶¶ 7-9 together with Exhibits "4," and "5"attached thereto. The Defendant was also aware the products she advertised, offered for sale, and sold were non-genuine. See Oka Decl. ¶¶ 7-9 and printouts of Allen's websites EuropeanBeautyFashion.com, UltimateDesignersHandbags.com and MyClassyFashion.com attached thereto as Composite Exhibits"1," "2" and "3."

Express evidence of Defendant's intent to capitalize on the reputation and goodwill of the Chanel Marks is found in the identification of the Defendant's Goods offered for sale on the Defendant's websites EuropeanBeautyFashions.com, UltimateDesignersHandbags.com and MyClassyFashion.com as "replica" or "inspired." See true and correct printouts from EuropeanBeautyFashions.com, UltimateDesignersHandbags.com and MyClassyFashion.com attached as Composite Exhibits "1," "2," and "3" to Oka Decl. Furthermore, the Defendant's disclaimer page on Defendant's UltimateDesignersHandbags.com states the Defendant's Goods "while they are detailed and authentic looking, and of excellent quality,... . THESE ARE NOT AUTHENTIC PRODUCTS." Additionally, evidence of the Defendant's intent to capitalize on the reputation and goodwill of the Chanel Marks is also found in the disclaimer page of the

8

Defendant's website on which she acknowledges Plaintiff's trademark rights and disclaims

association. See true and correct printout from UltimateDesignersHandbags.com attached as

Composite Exhibit "2" to Oka Decl.

Other courts have considered the effect of a "replica" type disclaimer similar to the one

used by the Defendant and found the use of such disclaimer to be evidence of bad faith and

illustrative of the intent to capitalize on the value and renown of the Plaintiff's Marks.  For

example, in Rolex Watch USA, Inc. v. Jones, 2000 WL 1528263, at *3 (S.D.N.Y. Oct. 13, 2000)

the Honorable Judge Cote held as follows:

> Moreover, Jones' bad faith is manifest.  Jones' websites show that Jones markets his
> products as replicas of the Plaintiff's products.  Jones undeniably "adopted [his] mark[s]
> with the intention of capitalizing on Plaintiff[s]' reputation and goodwill and any
> confusion between his and the senior user[s] product[s]".  Lang v. Retirement Living Pub.
> Co. Inc., 949 F.2d 576, 583 (2d Cir. 1981).
>
> Footnote 1 – the fact that Jones' websites contain a disclaimer stating that his
> products are replicas, and that "[by] purchasing one of these replicas by [sic] agrees
> not to sell or represent them as genuine," is not evidence of good faith, as Jones
> clearly sought to capitalize on the value and renown of the Plaintiff's marks.  It also
> does not diminish the likelihood of confusion.  Likelihood of confusion does not
> focus solely on the party purchasing a product from the defendant; "post-sale
> confusion as well as point-of-sale confusion [is] actionable under the Lanham Act."
> Nabisco, Inc. v. PF Brands, Inc., 191 F.3d 208, 218 (2d Cir. 1999).

See also Chanel, Inc. et al. v. Russell, et al., Case No. 1:06-cv-21829-PAS (S.D. Fla. 2006)

("This [disclaimer] evidence bolsters the admissions that Defendant knows the marks were

counterfeit and likely to create confusion, yet intentionally offered and sold them anyway.

Additionally, the Defendant conducted her illegal counterfeiting activities even after

being served by Chanel with two Cease and Desist letters.  Prior to filing this suit, Chanel

sent a cease and desist letter to the Defendant on January 13, 2005 regarding her sale of

products bearing counterfeits of the Chanel Marks via Europeanbeautyfashions.com. See

Oka Decl. ¶7 and true and correct copies of Chanel's January 13, 2005 cease and desist letter

and cease and desist electronic mail message attached thereto as Composite Exhibit"4." The letter advised Defendant she was engaging in illegal activity and demanded she stop. See Id. On January 16, 2005, Chanel received a response from the Defendant stating that she removed all items bearing counterfeits of the Chanel Marks from her website EuropeanBeautyFashions.com. See Oka Decl. ¶¶8-9 and a true and correct copy of the January 16, 2005 email response Chanel received from Defendant Allen attached thereto as Exhibit "5."

However, despite receiving express notice of the illegality of her activities, on March 25, 2005, the Defendant created a new Internet retail website operation, UltimateDesignersHandbags.com, through which she continued her counterfeiting activities. See Holmes Decl. ¶ 4 and a true and correct copy of the Whois Search printout attached thereto as Exhibit "1." Upon discovery of the Defendant's post-cease and desist letter website, Chanel's investigator attempted to make a purchase from the website UltimateDesignersHandbags.com by placing an order for a handbag bearing counterfeits of the Chanel Marks for a total of $81.94. See Holmes Decl. ¶6. Holmes paid with debit/credit card, and was subsequently contacted via telephone regarding his purchase by a person who identified herself as Linda Allen. See Id. at ¶6. Holmes later determined that phone number he received the phone call from belonged to Allen. See Id. at ¶7. However, Holmes never received the handbag he had purchased from the Defendant, nor did he receive a refund. See Id. at ¶8. The Defendant simply stole Holmes' money.

On December 30, 2005, Chanel's outside counsel, Stephen M. Gaffigan, issued a second cease and desist letter accompanied by a draft of the Complaint filed in this matter to the Defendant. See Declaration of Stephen M. Gaffigan ("Gaffigan Decl.") ¶4 (attached hereto as Exhibit "F") together with a true and correct copy of the cease and desist letter,

dated December 30, 2005, sent to the Defendant attached thereto as Exhibit "1." The

Defendant responded on January 6, 2006 and February 23, 2006, stating that she removed all

Chanel products from her websites. See Decl. of Gaffigan ¶5 and true and correct copies of

the Defendant's January 6, 2006 and February 23, 2006 responses attached thereto as

Exhibits "2" and "3," respectively. Defendant also claimed she had only sold two pairs of

Chanel earrings which were returned to her broken. Id. Thereafter, Defendant continued to

sell counterfeit Chanel branded goods.

On March 6, 2007, the Defendant created yet another website MyClassyFashion.com

through which she continued her counterfeiting activities. See Oka Decl. ¶12 together with true

and correct printouts from MyClassyFashion.com attached thereto as Composite Exhibit "3,"

Holmes Decl. ¶10 together with true and correct copy of the WHOIS search report for

"MyClassyFashion.com" attached thereto as Exhibit "2," and Composite Exhibit "C" hereto.

### 2.    A Significant Statutory Damage Award Is Warranted.

In light of the amount of time over which the Defendant conducted her counterfeiting

activities, and the fact she continued such activities despite express notice she was engaged in

illegal behavior, this Court should award a significant amount of statutory damages available

under the Lanham Act to Chanel to ensure Chanel is compensated and that the Defendant and

others are deterred from future infringement and counterfeiting.

Title 15 U.S.C. § 1117(c) "does not provide guidelines for courts to use in determining an

appropriate award as it is only limited by what the court considers just." Gucci America, Inc. v.

Duty Free Apparel, Ltd., 315 F.Supp.2d 511, 520 (S.D.N.Y. 2004) quoting Louis Vuitton

Malletier v. Veit, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002) and 15 U.S.C. §1117(c). Many courts

have found some guidance in the caselaw of the analogous provision of the Copyright Act, 17

U.S.C. § 504(c), which also provides statutory damages for willful infringement. See, e.g ., Louis

11

Vuitton, 211 F.Supp.2d at 583, Sara Lee Corp. v. Bags of N.Y., Inc., 36 F.Supp.2d 161, 166

(S.D.N.Y. 1999). Under the Copyright Act, courts look to factors such as: (1) "the expenses

saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the

copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the

Defendants' conduct was innocent or willful;" (6) "whether a defendant has cooperated in

providing particular records from which to assess the value of the infringing material produced;"

and (7) "the potential for discouraging the defendant." Fitzgerald Pub. Co., Inc. v. Baylor Pub.

Co., 807 F.2d 1110, 1117 (2d Cir. 1986), Gucci America, 315 F.Supp.2d at 520. Moreover, it has

been held where "a defendant is shown to have acted wilfully, a statutory damages award should

incorporate not only a compensatory, but also a punitive component to discourage further

wrongdoing by the defendants and others." Rolex Watch U.S.A., Inc. v. Jones, 2002 WL

596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Maas, M.J.), adopted without modification by Judge

Cote on June 18, 2002.

Perhaps the best dissertation on the award of statutory damages pursuant to '1117(c) can

be found in Sara Lee, 36 F. Supp. 2d. 161 (S.D. N.Y 1989). The Sara Lee Court stated as

follows:

> While '1117(c) looks to compensatory consideration (e.g., actual
> losses and trademark value), it also looks to punitive
> considerations (e.g., deterrence to other infringers and readdress of
> wrongful defense conduct)...those, damages inquiries under
> '1117(c) and those under ''1117(a), (b) look to similar
> considerations but differ in that under '1117(c), Athere is no
> necessary mathematical relationship between the size of such an
> award and the extent or profitability of the Defendant=s wrongful
> activity@ because '1117(c) omits the strict limits on
> compensatory and punitive relief of ''1117(a),(b). Gucci AM,
> Inc. et al. v. Gold Ctr. Jewelry, et al., 997 F. Supp. 399, 404
> (S.D. N.Y.).

The Court has wide discretion to set an amount of statutory damages.  Sara Lee Corp.  v.  Bags of New York, Inc., 36 F. Supp.2d at 166-67 (collecting cases, analogizing the Copyright Act statutory damages, and describing breadth of court=s discretion in awarding statutory damages under the Lanham Act); Playboy Enters, Inc.  v.  Asia Focus Int=l, Inc., 1998 U.S. Dist. Lexis 10359 (E.D.Va. 1998); see also Island Software & Computer Serv. v. Microsoft Corp., 413 F.3d 257, 265 (2d Cir. 2005) ("within the statutory framework, a district judge has wide discretion in setting the statutory damage award" for copyright infringement.); NFL v. Primetime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) ("It is well-established that district courts have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act.").  Indeed, an award of statutory damages has been determined to be an appropriate remedy even for infringements that caused no proved actual damages.  Id. at 166; See also Playboy Enterprises, Inc.  v.  Universal Tel-A Talk, Inc., 1998 U.S. Dist. LEXIS 17282 (E.D. PA. 1989) (ADefendants did not have any profits and plaintiff has failed to prove actual damages.  Nevertheless, Plaintiff may elect to recover statutory damages.@).

The evidence in this case shows that Defendant offered for sale and sold at least six (6) types of goods, namely handbags, wallets, watches, necklaces, earrings, and sunglasses in multiple styles, bearing different marks which were in fact counterfeits of the Chanel Marks protected by fifteen (15) Federal Registrations for such goods. See Hahn Decl. ¶5, Porteous Decl. ¶¶6-7, and Holmes Decl. ¶6,11 and 15 and Exhibits attached thereto to each Declaration.  A chart outlining each Chanel Registration and the infringement thereof is attached to the Decl. of Gaffigan as Exhibit "4."   Based on the above considerations, Chanel respectfully suggests the Court could start with a baseline statutory award of $1,500.00 ($500.00 per website operated),

per mark counterfeited per type of goods, treble it to reflect the Defendant's willfulness, and then double the product for the purpose of deterrence. The result would be $9,000.00 per registered Chanel Mark counterfeited (15) per type of goods sold (6 – handbags, wallets, sunglasses, necklaces, watches and earrings), for a total award of amount $810,000.00 in statutory damages. Chanel believes that amount fairly achieves the statutory goals of compensation and punishment. A similar damage model was recently suggested by Magistrate Judge Orenstein and accepted by District Judge Cogan in <u>Chanel, Inc. v Schwartz</u>, Case No. 06 CV 3371 (E.DN.Y. 2007). The <u>Schwartz</u> case involved a single Defendant, a single website, and no cease and desist letter, and the Court used a baseline statutory award of $500 per mark counterfeited per type of goods.

Chanel submits that the award requested herein should be sufficient to deter the Defendant and others from continuing to counterfeit or otherwise infringe Chanel's trademarks, compensate Chanel, and punish the Defendants, all stated goals of 17 U.S.C. § 1117 (c). <u>See</u> <u>Sara Lee Corp.</u>, 36 F. Supp. 2d at 165. The Plaintiff's damage request is well below the statutory maximum and reasonable in light of the number of items apparently being sold by the Defendant. While the Defendant's poor record keeping has prevented Chanel from obtaining competent discovery regarding Defendant's sales, it is reasonable to conclude the number of counterfeit and infringing units sold by the Defendant which were identified during the course of Chanel's investigation do not constitute the whole of the Defendant's counterfeiting activities with respect to the Chanel Marks. Additionally, it is reasonable to conclude the Defendant operated a successful counterfeiting operation based on the number of items listed for sale by her, and the fact the Defendant continuously operated her Internet websites since at least July 15, 2004 (<u>See</u> Porteous Decl. ¶4 together with Exhibit "1" attached thereto) and continued to open and/or operate new websites even after being sued by the Plaintiff.

Other courts have granted significant statutory damages under the Lanham Act in line

14

with the Plaintiff's request herein. See, e.g., Sara Lee Corp., 36 F. Supp. 2d at 170 (awarding $750,000.00); Tommy Hilfiger Licensing, Inc. v. Goody's Family Clothing, Inc., 2003 U.S. Dist. LEXIS 8788 (N.D. Ga. 2003) (awarding $2,100,000.00); Playboy Enters., Inc., 1998 U.S. Dist. LEXIS 10359 (awarding $500,000.00 per type of good for Defendants' counterfeiting of five of Playboy's trademarks); Chanel, Inc. v. Diana Prustman et al., Case No. 2:02-cv-34-FtM-29 DNF (M.D. Fla. 2002) (summary judgment awarding $5,000,000.00); Gucci America, Inc. v. RIN, LLC et al., Case No. 03-21798-civ-COOKE/McAliley (S.D. Fla. 2004) (summary judgment awarding $2,700,000.00) Chanel, Inc. v. Hugo Rios et al., Case No. CV-03-273-RSWL(PJW) (C.D. Cal. 2003) (awarding $750,000.00).  Chanel's damage request is reasonable.

### C.    Chanel's Damages for Counts II, III, IV and V.

In addition to trademark counterfeiting and infringement (Count I), the Plaintiff's Complaint also sets forth causes of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), trademark dilution pursuant to 15 U.S.C. § 1125(c) (Count III), common law trademark infringement and unfair competition (Counts IV and V).  As to Counts II, III, IV and V, the allowable scope of monetary damages mirrors that allowed by 15 U.S.C. § 1117 for Count I.   Accordingly, judgment on Counts II, III, IV, and V should be limited to the amount awarded pursuant to Plaintiff's request above with respect to Count I.

### D.    Chanel Should be Awarded Its Reasonable Attorney Fees.

#### 1.    Entitlement to Fees.

Chanel is entitled to recovery of its reasonable attorney fees incurred pursuant to 15 U.S.C. § 1117 (a) and/or (b).  Generally, in trademark infringement cases, an award of attorney's fees is warranted pursuant to the "exceptional case" standard of 15 U.S.C. §1117(a) where, as here, infringement was willful. See Kepner-Tegoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999).

Also, pursuant to 15 U.S.C. § 1117(b), reasonable attorney fees must be awarded when a defendant intentionally uses a mark, knowing such mark is a counterfeit mark. Only if the Court finds extenuating circumstances can the Court limit such recovery. Fendi S.a.S. Di Paola v. Cosmetic World, 1 U.S.P.Q. 2d 1508, 1511 (S.D.N.Y. 1986); see also Louis Vuitton S.A. v. Pun Yan Lee, 875 F.2d 584, 588 (7th Cir. 1989). The extenuating circumstance defense is an affirmative defense which should be pled but, in this case, was not pled by the Defendant. See Louis Vuitton, 875 F.2d at 590.

While questions have been raised about the availability of an award of attorney's fees where statutory damages are also awarded, courts have found both appropriate in "exceptional cases" of willful infringement. Silhouette Int'l Schmied AG v. Vachik Chakhbazian, 2004 WL 221160, at *3 (S.D.N.Y. Oct. 4, 2004) (listing cases); Sara Lee Corp., 36 F.Supp. at 170 (awarding both without comment). Compare Gucci Am., Inc. Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F.Supp. at 522-23 (refusing award of attorney's fees in addition to statutory damages "which are available ' instead of actual damages' " (quoting 15 U.S.C. § 1117(c) (emphasis in case)). In any event, the Court need not decide the issue in order to award fees in this case.

Under the Stipulated Judgment in this case, the Defendant is liable to Chanel on its claim for unfair competition under 15 U.S.C. § 1125(a). As noted above, the Court may award attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a); see, e.g., New York State Soc. of Certified Public Accountants v. Eric Louis Assoc., Inc., 79 F.Supp.2d 331, 347 (S.D.N.Y.1999); 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:104. Because the Defendant's acts of unfair competition were also engaged in willfully, and a willful violation satisfies the "exceptional case" requirement of § 1117(a), an award of Chanel's attorneys' fees and costs is appropriate. See, e.g., International Star Class Yacht Racing Ass'n v. Tommy

16

Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996) ("an award of attorney fees may be justified when bad faith infringement has been shown"); Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir.1995) (" 'Exceptional' circumstances include willful infringement."); Sara Lee Corp. v. Bags of New York, Inc., 36 F.Supp.2d 161, 170 (S.D.N.Y.1999); 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 30:99 (citing Senate Committee report for proposition that willful infringement constitutes "exceptional case"), § 30:100 (courts routinely awarded attorneys' fees to prevailing plaintiffs in counterfeiting cases even before enactment of 1996 counterfeiting amendments, citing cases). Here, Chanel has presented substantial evidence that the Defendant's infringement in this case was willful. Therefore, Chanel submits that an award of attorney's fees and expenses is warranted in this case.

### 2.    Calculation of Fees.

Under the lodestar approach, the estimated fee is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable rate. Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citing Blanchard v. Bergerson, 489 U.S. 87, 94 (1989). There is a "strong presumption" that the lodestar is reasonable, however, the calculated amount may be adjusted, depending on such considerations as the novelty and difficulty of the issues concerned and the experience and ability of the attorneys. See Toys "R" Us, Inc. v. Abir, 1999 WL 61817, at *1-2 (S.D.N.Y. Feb. 10, 1999). In determining a reasonable hourly rate, the court should consider the rates for legal services "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (*quoting* Blum v. Stevenson, 465 U.S. 886, 895 n. 11 (1984). In addition, the court may also rely on its own knowledge of hourly rates charged in private firms to determine what is reasonable in the relevant community. Miele v. New York State Teamsters Conf. Pens & Retirement Fund, 831 F.2d 407, 409 (2d Cir. 1987). For purposes of determining the fee, the

relevant community is the judicial district in which the trial court sits.  In re Agent Orange Prod.

Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987).

Plaintiff's counsel spent approximately 95.35 hours of attorneys' time in this case in

connection with investigative oversight, litigation and settlement discussions.  As detailed in the

Gaffigan Decl. ¶9, and the Declaration of John Macaluso ("Macaluso Decl.") attached hereto as

Exhibit "G", these hours were reasonable in light of the nature of the Defendants' counterfeiting

operations.  Plaintiff's counsel charged the rates of $150 to $375 per hour for (See Macaluso

Decl. together with true and correct copies of Gibney, Anthony & Flaherty billing detail attached

thereto as Composite Exhibit "1") and $350.00  (See Gaffigan Decl. together with true and

correct copies of his billing detail attached thereto as Composite Exhibit "5") per hour for their

services.  Attorneys' fees incurred in this matter total $22,334.50.  See Gaffigan Decl. ¶9 and

Macaluso Decl. ¶5.  These rates are either equal to or less than the prevailing market rates for

comparable services in the Southern District of New York, where this action was filed.

Plaintiff's counsel made every reasonable effort to minimize hours spent on the case, to avoid

redundant or otherwise unnecessary time, and the fee requested is equal to or below the amount

spent on similar past cases.  Id.  The fee is also reasonable in light of the extent of the

Defendants' conduct.  Moreover, the fee is reasonable in light of the fact that the legal services in

this case were performed by experienced intellectual property litigators.

Chanel also incurred investigative charges in the total amount of $2,147.54 which were

necessary to uncover information regarding the Defendants' illicit activities.  See Holmes Decl.

¶19 ($1,511.89) and Poreous Decl. ¶9 ($635.65).  Investigative charges are recoverable under the

Lanham Act.  Fila U.S.A. v. RunRun Trading Co., 1996 U.S. Dist. LEXIS 6893 (S.D.N.Y.

1996); Louis Vuitton S.A., v. Downtown Luggage Center, 706 F. Supp. 839, 842 (S.D. Fla.

1988); see also the Joint Statement on Trademark Counterfeiting Legislation, which expressly

provides that "to the extent that an investigator acts under the direction of an attorney, however, his or her fees may be recovered by a prevailing plaintiff as part of an award of attorney fees." 130 CONG. REC. H12083 (October 10, 1984).

### E.    Costs Should Be Awarded.

Chanel also requests that this Court award costs in the total amount of S425.00.  <u>See</u> Gaffigan Decl. ¶14 and Macaluso Decl. ¶9.  These costs consist of the following:

| | |
|---|---|
| Filing Fee: | $350.00 |
| Process Server Fee: | $75.00[1] |

## III.    CONCLUSION

In view of the foregoing, Chanel respectfully requests the following:

a.    That the Court enter a finding as that the Defendants' illegal activities were engaged in willfully and maliciously pursuant to 15 U.S.C. § 1117(b), and that this case is "exceptional" within the meaning of 15 U.S.C. §1117(a);

c.    Award statutory damages to Chanel in an amount not less than eight hundred and ten thousand dollars and ($810,000.00);

d.    Award Chanel's attorneys fees in the amount of $22,334.50;

g.    Award Chanel's investigative fees in the amount of $2,147.54; and

h.    Award Chanel's costs in the amount of $425.00

---

1 A true and correct copy of the invoice issued by PFI Serves in connection with the service of process on the Defendant is attached to the Gaffigan Decl. at Exhibit "6."

RESPECTFULLY SUBMITTED this _9_th day of April, 2008.

GIBNEY, ANTHONY, & FLAHERTY, LLP

By: _____

John Macaluso
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
E-mail: jmacaluso@gibney.com
*Attorney for Plaintiff Chanel, Inc.*