**GIBNEY, ANTHONY & FLAHERTY, LLP**
JOHN MACALUSO (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile:  (212) 688-8315
E-mail:  JMacaluso@Gibney.com
**And**
**STEPHEN M. GAFFIGAN, P.A.**
STEPHEN M. GAFFIGAN(Admitted Pro Hac Vice)
312 S.E. 17th Street, Second Floor
Ft. Lauderdale, Florida 33316
Telephone: 954-767-4819
Facsimile: 954-767-4821
E-mail: Stephen@smgpa.net
Attorneys for CHANEL, INC., a New York Corporation,

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHANEL, INC., a New York corporation, | ) | CASE NO. CV 07-4858 (NRB) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DECLARATION OF ADRIENNE HAHN** |
| | ) | **SISBARRO IN SUPPORT OF** |
| LINDA ALLEN a/k/a LINDA ROONEY | ) | **PLAINTIFF'S MEMORANDUM OF** |
| a/k/a COURTNEY ALLEN, d/b/a | ) | **POINTS AND AUTHORITIES IN** |
| EUROPEAN BEAUTY FASHIONS d/b/a | ) | **SUPPORT OF REQUEST FOR** |
| EUROPEANBEAUTYFASHIONS.COM | ) | **DAMAGES** |
| d/b/a MY CLASSY FASHION d/b/a | ) | |
| MYCLASSYFASHION.COM d/b/a | ) | |
| ULTIMATEDESIGNERSHANDBAGS.C | ) | |
| OM d/b/a ULTIMATE DESIGNER | ) | |
| HANDBAGS and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

I, Adrienne Hahn Sisbarro, declare and state as follows:

1.      My name is Adrienne Hahn Sisbarro and I am employed by Chanel, Inc.

("Chanel") as Director, Legal Administration.  I have been so employed since 1988.  Chanel is a

corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Street, New York, New York 10019.

2.  I am over 18 years of age and have personal knowledge of the facts set forth herein.

3.  In my capacity as Chanel's Director, Legal Administration, I am responsible, in part, for Chanel's trademark anti-counterfeiting efforts in the United States. As a result, I am fully familiar with most aspects of the manufacture, sale, and distribution of genuine Chanel products, including handbags, wallets, watches, necklaces, costume jewelry, and sunglasses. I have been trained to identify the distinctions between genuine Chanel merchandise and counterfeit copies of the same.

4.  Since the 1920s, Chanel has been engaged in the promotion, distribution, and sale in interstate commerce of high quality items under the Chanel trademarks.

5.  Chanel the owner of the following trademarks, which are the subject of the following United States Federal Trademark Registrations:

| MARK | REG. NO. | REG. DATE |
|------|----------|-----------|
| CHANEL | 0,626,035 | May 1, 1956 |
| CC MONOGRAM | 1,314,511 | January 15, 1985 |
| CHANEL | 1,347,677 | July 9, 1985 |
| CHANEL | 1,733,051 | November 17, 1992 |
| CC MONOGRAM | 1,734,822 | November 24, 1992 |
| CC MONOGRAM | 3,025,934 | December 13, 2005 |
| CC MONOGRAM | 3,022,708 | December 6, 2005 |
| CHANEL | 1,510,757 | November 1, 1988 |
| CC MONOGRAM | 1,654,252 | August 20, 1991 |

| | | |
|---|---|---|
| CC MONOGRAM | 3,025,936 | December 13, 2005 |
| CHANEL | 0,612,169 | September 13, 1955 |
| CHANEL | 0,902,190 | November 10, 1970 |
| CHANEL | 0,955,074 | March 13, 1973 |
| CHANEL | 1,571,787 | December 19, 1989 |
| CC MONOGRAM | 1,501,898 | August 30, 1988 |

which are registered in International Classes 6, 9, 14, 18 and 28 and are used in connection with the manufacture and distribution of, among other things, handbags, wallets, watches, necklaces, costume jewelry including earrings and necklaces, and sunglasses (the "Chanel Marks"). True and correct copies of the Federal Registrations for the Chanel Marks are attached hereto as Composite Exhibit "1."

6.     Chanel products are promoted and sold through Chanel boutiques throughout the United States, at high quality, prestige retail stores and via the Internet throughout the world. Accordingly, Chanel products are on constant direct display to consumers in every market. During the more than 70 years that Chanel has sold its products in interstate commerce under the Chanel trademarks, Chanel has spent hundreds of millions of dollars to advertise and promote its goods extensively. In the last five years, Chanel's sales of high quality handbags, wallets, watches, necklaces, costume jewelry including earrings and necklaces, sunglasses, and other goods have been well into many hundreds of millions of dollars.

7.     As a result of the foregoing, the Chanel Marks have acquired fame in the consumer market for a wide variety of products, including high quality handbags, wallets, watches, necklaces, costume jewelry including earrings and necklaces, sunglasses, and other goods. The Chanel Marks have come to symbolize the enormous goodwill of Chanel's products throughout the United States and the world. No other manufacturer lawfully uses the Chanel

Marks or any substantially similar marks in connection with the manufacture, sale, or distribution of similar goods.

8.    The Chanel Marks are vital to Chanel's business, as the marks represent virtually the entire value of the company and its associated image.  Chanel suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time any third parties, including the Defendant Linda Allen a/k/a Linda Rooney a/k/a Courtney Allen d/b/a Europeanbeautyfashions.Com D/B/A European Beauty Fashions d/b/a Myclassyfashion.Com d/b/a My Classy Fashion d/b/a Ultimatedesignershandbags.Com d/b/a Ultimate Designer Handbags ("Allen"), sell counterfeit goods bearing identical or substantially similar trademarks.

9.    Chanel received information that Allen was selling handbags, wallets, watches, necklaces, costume jewelry including earrings, sunglasses and various other items under the Chanel Marks without Chanel's authorization through at least three websites under the domain names EuropeanBeautyFashions.com, UltimateDesignersHandbags.com, and MyClassyFashion.com.  True and correct printouts of the Allen's websites EuropeanBeautyFashions.com, UltimateDesignersHandbags.com and MyClassyFashion.com are attached to the Declaration of Lynnette Oka ("Oka") as Composite Exhibits "1," "2," and "3," respectively.   Allen does not have, nor has she ever had, the right or authority to use the Chanel Marks for any purpose.

10.    In or about December, 2004, as part of its ongoing investigations regarding the sale of counterfeit "replica" Chanel products, Chanel retained Skipp Porteous of Sherlock Investigations, Inc. ("Porteous").   Upon Chanel's instruction, Porteous purchased a handbag from Allen through her website, EuropeanBeautyFashions.com.  On or about December 17, 2004, Porteous received the handbag purchased from Allen through her website

4

EuropeanBeautyFashion.com and delivered the same to Chanel with an appropriate chain of custody.

11.    I personally inspected and analyzed the handbag purchased from Allen through her website EuropeanBeautyFashions.com and determined it to be a non-genuine Chanel product.  My analysis included review of the workmanship and materials of the handbag including the hardware, the labeling of the product, and the quality of the product itself.  A true and correct photograph of the handbag purchased by Porteous from Allen through her website EuropeanBeautyFashions.com together with a true and correct copy of the chain of custody are attached to the Declaration of Porteous as Composite Exhibit "2."

12.    I did, however, personally review printouts of Allen's website EuropeanBeautyFashion.com (Comp. Ex. "1" to the Declaration of Oka) reflecting the products bearing the various Chanel Marks offered for sale by Allen through her website EuropeanBeautyFashion.com and concluded they were non-genuine Chanel products.  I reached this conclusion through my visual inspection of the products and the pricing and because I personally know that Chanel does not conduct business with Allen nor does she have the right or authority to use the Chanel Marks.   Additionally, Allen's website EuropeanBeautyFashion.com identifies the Chanel branded goods advertised and offered for sale as "replicas."

13.    In or about November 2005, Chanel retained Robert Holmes of IPCyberCrime.com, LLC f/k/a The Holmes Detective Agency ("Holmes") as a part of its ongoing investigations regarding the sale of counterfeit "replica" Chanel products by Allen through her new website UltimateDesignersHandbags.com.  Upon Chanel's instruction, Holmes purchased a handbag bearing the Chanel Marks at issue in this proceeding from Allen through

her website, UltimateDesignersHandbags.com.   However, Holmes never received the handbag

he purchased from Allen through her website UltimateDesignersHandbags.com.

14.    I did, however, personally review printouts of Allen's website

UltimateDesignersHandbags.com (Comp. Ex. "2" to the Declaration of Oka) reflecting the

products bearing the various Chanel Marks offered for sale by Allen through her website

UltimateDesignersHandbags.com and concluded they were non-genuine Chanel products.  I

reached this conclusion through my visual inspection of the products and the pricing and because I

personally know that Chanel does not conduct business with Allen nor does she have the right or

authority to use the Chanel Marks.   Additionally, Allen's website

UltimateDesignersHandbags.com identifies the Chanel branded goods advertised and offered for

sale as "replicas."

15.    In or about May 2007, Chanel became aware that Allen was continuing to sell and

offer for sale counterfeit Chanel items through a new Internet website "MyClassyFashion.com."

16.    In or about May, 2007, Chanel again retained Holmes as a part of its ongoing

investigations regarding the sale of counterfeit "replica" Chanel products by Allen through her

new website MyClassyFashion.com.

17.    I did, however, personally review printouts of Allen's website

MyClassyFashion.com (Comp. Ex. "3" to the Declaration of Oka) reflecting the products bearing

the various Chanel Marks offered for sale by Allen and concluded they were non-genuine Chanel

products.  I reached this conclusion through my visual inspection of the products and the pricing

and because I personally know that Chanel does not conduct business with Allen nor does she

have the right or authority to use the Chanel Marks.  Additionally, identifies the Chanel branded

goods advertised and offered for sale as "inspired."

18.    As a result of the availability of the counterfeit products being offered by the Defendant at websites using the domain names EuropeanBeautyFashions.com, UltimateDesignersHandbags.com, and MyClassyFashion.com, Chanel is highly likely to experience irreparable damage to its reputation among consumers unless the infringing activity alleged in the Complaint is stopped.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Dated this _____ day of April, 2008.

ADRIENNE HAHN SISBARRO